IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| WILLIAM MANNING, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Civil Action No. 5:15-cv-00566-R |
| | ) | |
| PD-RX PHARMACEUTICALS INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## ORDER[1]

Before this Court are several motions to dismiss for lack of personal jurisdiction. Doc. Nos. 5, 26, 27, 77, 121, 122, 176.[2] After reviewing the parties' briefs, the Court agrees it lacks personal jurisdiction over the Defendants. Accordingly, the Court GRANTS the motions to dismiss[3] and DISMISSES Plaintiffs' complaint in its entirety,

---

[1] **On May 25, 2016, Plaintiffs, with the exception of Lawrence Sanders, submitted a notice to the Court indicating that they intend to voluntarily dismiss their claims against the Defendants. On May 27, 2016, the remaining Plaintiffs filed joint motions to dismiss their claims against Defendants, which the Court has granted. However, because the claims of Lawrence Sanders remain pending, these dismissals do not obviate the need for a ruling from this Court.**

[2] Doc. No. 5 was filed by Eli Lilly and Company ("Lilly"); Doc. No. 26 was filed by Covidien, Inc. ("Covidien); Doc. No. 27 was filed by Mallinckrodt, Inc. ("Mallinckrodt"); Doc. No. 77 was filed by Cornerstone Biopharma, Inc. and Cornerstone Biopharma Holdings LLC f/k/a Cornerstone Biopharma Holdings, Inc. ("Cornerstone"); Doc. No. 121 was filed by Watson Pharmaceuticals, Inc. n/k/a Actavis, Inc. ("Watson); Doc. No. 122 was filed by Teva Pharmaceuticals USA, Inc. ("Teva"); and Doc. No. 176 was filed by Mylan Inc. and Mylan Pharmaceuticals Inc. ("Mylan"). Additionally, the Court notes that although Cornerstone Biopharma Holdings, Inc. was named as a defendant, its counsel represents that it is now known as Cornerstone Biopharma Holdings, LLC. Doc. No. 36. As a limited liability company, Cornerstone Biopharma Holdings, LLC is a citizen of every place that its members were citizens. *Siloam Springs Hotel, L.L.C. v. Century Sur. Co.*, 781 F.3d 1233, 1238 (10th Cir. 2015). Plaintiffs do not allege, and this Court does not assume, that any member of this limited liability company is an Oklahoma citizen.

[3] The Court only grants Mylan's motion in part, as Mylan also moved to dismiss for failure to state a claim. The Court denies that portion of Mylan's motion as moot.

thereby mooting Defendants' Joint Motion to Dismiss and/or for Judgment on the Pleadings (Doc. No. 120). The Court further denies Plaintiffs' Motion to Amend/Correct, Doc. No. 148, as MOOT.[4]

I. **BACKGROUND**

Plaintiffs in this products-liability action allege injuries resulting from the use of propoxyphene-containing products that Defendants manufactured, marketed, distributed, or sold. Doc. No. 1-1. Admittedly, no Plaintiff is an Oklahoma resident. Doc. No. 180-1 at 9. Nevertheless, Plaintiffs contend that this Court may exercise specific and general jurisdiction based on Defendants' in-state activity.

II. **CONSIDERATION OF PERSONAL JURISDICTION BEFORE SUBJECT MATTER JURISDICTION**

Both parties present jurisdictional challenges. Defendants argue that the Court lacks personal jurisdiction while the Plaintiff argues the Court lacks subject-matter jurisdiction over the action. The Court may evaluate personal jurisdiction before subject matter jurisdiction pursuant to the holding in *Ruhrgas AG v. Marathon Oil Co.*:

> . . . in cases removed from state court to federal court, as in cases originating in federal court, there is no unyielding jurisdictional hierarchy. Customarily, a federal court first resolves doubts about its jurisdiction over the subject matter, but there are circumstances in which a district court appropriately accords priority to a personal jurisdiction inquiry.

526 U.S. 574, 584 (1999). Such circumstances include where personal jurisdiction presents straightforward issues, while subject-matter jurisdiction raises issues that are

---
[4] The Court reviewed Plaintiffs' Motion to Amend their complaint and determined that the proposed amendments would not cure the jurisdictional defects cited herein.

difficult, novel, or complex. *Id.* at 588 (no abuse of discretion to address straightforward personal jurisdictional question before difficult and novel subject matter jurisdiction issue); *Gadlin v. Sybron Int'l Corp.*, 222 F.3d 797, 799 (10th Cir. 2000) ("a court does not abuse its discretion if it addresses personal jurisdiction first in a case where alleged defects in subject matter jurisdiction raise difficult questions but the personal jurisdiction issue is straightforward and presents no complex questions of state law"); *Browning v. Salmon*, 143 F. App'x 917, 920 n.1 (10th Cir. 2005) (ruling on personal jurisdiction mooted appellant's argument regarding subject-matter jurisdiction) (citing *id.*)

Upon review of the parties' arguments regarding both jurisdictional issues, the Court deems it appropriate to address personal jurisdiction first. The personal jurisdiction question presents straightforward issues regarding the sufficiency of contacts and the consequences of registration to do business. Conversely, subject-matter jurisdiction presents complex issues, including the doctrine of fraudulent misjoinder, a doctrine the Tenth Circuit has twice declined to adopt or reject.[5] *See Parson v. Johnson & Johnson*, 749 F.3d 879, 893 (10th Cir. 2014) (declining to address appellant's alternative jurisdictional argument which required determination on whether to recognize the doctrine of fraudulent misjoinder of plaintiffs); *Lafalier v. State Farm Fire & Cas. Co.*, 391 F. App'x 732, 736 (10th Cir. 2010) (declining to decide whether to adopt the

---

[5] According to the judicially-created doctrine of fraudulent misjoinder, in an attempt to defeat diversity jurisdiction, plaintiffs violate Rule 20 of the Federal Rules of Civil Procedure by joining distinct claims against two or more groups of defendants. *See Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353 (11th Cir.1996), *abrogated on other grounds by Cohen v. Office Depot*, 204 F.3d 1069 (11th Cir. 2000).

doctrine, as it would not change the result in the case). Moreover, courts who have adopted the doctrine have not applied it uniformly.[6]

Given these considerations, the Court finds it appropriate and efficient to address personal jurisdiction first.

## III.     PERSONAL JURISDICTION STANDARD

"Whether a federal court has personal jurisdiction over a nonresident defendant in a diversity action is determined by the law of the forum state." *Yarbrough v. Elmer Bunker & Assocs.*, 669 F.2d 614, 616 (10th Cir. 1982) (citations omitted). "The test for exercising long-arm jurisdiction in Oklahoma is to determine first whether the exercise of jurisdiction is authorized by statute and, if so, whether such exercise of jurisdiction is consistent with constitutional requirements of due process." *Luckett v. Bethlehem Steel Corp.*, 618 F.2d 1373, 1385–86 (10th Cir. 1980) (citations omitted). Because the Oklahoma long-arm statute extends jurisdiction to the maximum extent permitted by due process, "this two-part inquiry collapses into a single due process analysis." *Rambo v.Am. S. Ins. Co.*, 839 F.2d 1415, 1416 (10th Cir. 1988) (quoting OKLA. STAT. ANN. tit. 12,§ 2004(F) ("A court of this state may exercise jurisdiction on any basis consistent with the Constitution of this state and the Constitution of the United States.")).

"The Due Process Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful

---

[6] Some courts require the misjoinder be "egregious" while other courts find that "mere" misjoinder will suffice. *Compare, e.g., Tapscott*, 77 F.3d 1353 (requiring egregiousness) *with Greene v. Wyeth,* 344 F. Supp. 2d 674, 685 (D. Nev. 2004) (misjoinder alone sufficient to sever parties); *In re Rezulin Prod. Liab. Litig.*, 168 F. Supp. 2d 136, 147–48 (S.D.N.Y. 2001) (same). Further complicating matters, there is disagreement as to what constitutes "egregious." *See Halliburton v. Johnson & Johnson*, 983 F. Supp. 2d 1355, 1359 (W.D. Okla. 2013) (collecting cases).

'contacts, ties, or relations.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471–72 (1985) (citation and footnote omitted). Accordingly, a court "may exercise personal jurisdiction over a nonresident defendant only so long as there exist 'minimum contacts' between the defendant and the forum State." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980) (citation omitted). The minimum-contacts test may be met by establishing either general or specific jurisdiction. *Employers Mutual Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1159 (10th Cir. 2010). If the minimum-contacts test is met, the Court must determine if the exercise of personal jurisdiction over Defendants would offend "traditional notions of fair play and substantial justice," or, instead, is "reasonable." *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1091 (10th Cir. 1998) (quoting *Asahi Metal Indus. Co. v. Superior Court of California*, 480 U.S. 102, 113 (1987)).

The burden to establish personal jurisdiction is on the plaintiff. *Dudnikov v. Charlk & Vermillion Fine Arts, Inc.*, 514 F.3d 1063, 1069 (10th Cir. 2008). Because the parties have engaged in jurisdictional discovery but there has been no evidentiary hearing, Plaintiffs need only make a *prima facie* showing of personal jurisdiction. *Anzures v. Flagship Rest. Grp.*, 2016 WL 1612789, at *2 (10th Cir. Apr. 22, 2016) (following limited jurisdictional discovery but no evidentiary hearing, plaintiff must only make a *prima facie* showing). The Court takes "as true all well-pled (that is, plausible, non-conclusory, and non-speculative . . .) facts alleged in plaintiffs' complaint." *Dudnikov*, 514 F.3d at 1070. All factual disputes are resolved in Plaintiffs' favor. *Id.*

## IV. SPECIFIC JURISDICTION

The exercise of specific jurisdiction over a defendant in a tort-based action is proper if (1) "the defendant purposefully directed its activities at residents of the forum state" and (2) "the plaintiff's injury arose from *those* purposefully directed activities." *Newsome v. Gallacher*, 722 F.3d 1257, 1264 (10th Cir. 2013) (citing *Dudnikov*, 514 F.3d at 1070) (emphasis added). A defendant purposefully directs its activities if it commits an intentional action, "expressly aimed at the forum state," with "knowledge that the brunt of the injury would be felt in the forum state." *Id.* (citing *Dudnikov*, 514 F.3d at 1072). To determine if an injury arises out of those activities, courts apply either the but-for or the proximate-cause test. *Id.* at 1269. Under the but-for test, "any event in the causal chain leading to the plaintiff's injury is sufficiently related to the claim to support the exercise of specific jurisdiction." *Id.* By contrast, the proximate-cause test "is considerably more restrictive and calls for courts to examine whether any of the defendant's contacts with the forum are relevant to the merits of the plaintiff's claim." *Id.* While the Tenth Circuit has not chosen one over the other, both tests require a "true causal element," between defendants' forum contacts and the litigation. *Id.*;[7] *see also Shrader v. Biddinger*, 633 F.3d 1235, 1240, 1246 n.8 (10th Cir. 2011) (discussing *Dudnikov,* 514 F.3d at 1078–79) (discussing the "causal aspect" of "arising out of"); *see also Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) ("specific jurisdiction requires an 'affiliatio[n] between the forum and the underlying controversy'") (quoting von Mehren

---

[7] The Tenth Circuit has rejected a third test, the "substantial connection" test. *See Shrader*, 633 F.3d at 1246 n.8 (discussing *Dudnikov*, 514 F.3d at 1078–79). "Under this theory, the relationship between the contacts and the suit can be weaker when the contacts themselves are more extensive." *Id.* Rejecting this test, the Tenth Circuit noted that the test "inappropriately blurs the distinction between specific and general personal jurisdiction." *Id.* The test "varie[d] the required connection between the contacts and the claims asserted based on the number of the contacts" and therefore "improperly conflates these two analytically distinct approaches to jurisdiction." *Id.* Because the test eliminated "the distinction between contacts that are sufficient to support any suit and those that require the suit be related to the contact, it also undermines the rationale for the relatedness inquiry: to allow a defendant to anticipate his jurisdictional exposure based on his own actions." *Id.* at 1078–79.

& Trautman, Jurisdiction to Adjudicate: A Suggested Analysis, 79 Harv. L.Rev. 1121, 1136 (1966)).

Plaintiffs contend that Defendants purposefully directed their contacts at Oklahoma because:

- the Defendant sells pharmaceutical products to Oklahoma residents, in some cases a "substantial amount;"

- the Defendant either retains or employs sales representatives who are or are "most likely" Oklahoma residents to visit Oklahoma physicians with the goal of encouraging the physicians to prescribe the entity's drugs to their patients, in order to maintain or increase that entity's market share in Oklahoma;

- the Defendant is registered to do business in Oklahoma;[8]

- the Defendant has been involved in litigation in Oklahoma Courts;[9]

- the Defendant has "transacted, solicited, and conducted business in the State of Oklahoma and derived substantial revenue from such business;"

- Defendants Lilly, Teva, and Mylan either have employees in Oklahoma or have advertised job openings for sales representatives or consultants in Oklahoma;

- Lilly has "collaborat[ed] with Oklahoma biomedical researchers in an effort to develop new drugs;"

- Cornerstone "routinely sponsor events aimed at healthcare providers so that it can maintain and/or steadily increase its market share of pharmaceutical drug sales in this state;"

- Watson has been registered with the Oklahoma State Board of Pharmacy since at least 1996 and holds several licenses by the Board, its subsidiary has been registered with the Board since 1990 until 1998, and Actavis is included as a Business Associate Vendor by the Oklahoma Association of Healthcare Providers;

---

[8] Plaintiff does not contend that Cornerstone, Watson, or Teva are registered to do business in the State.

[9] Plaintiffs do not contend that Cornerstone has been involved in prior litigation in Oklahoma.

- Teva has been registered with the Oklahoma State Board of Pharmacy since at least 2006 and holds several licenses by the Board, and a "Teva Pharmaceuticals USA Award" exists in the College of Pharmacy, University of Oklahoma; and

- Mylan "supports students in this very district by presenting an award to the outstanding graduate from the University of Oklahoma, College of Pharmacy."[10]

Plaintiffs contend that their injuries arose out of these contacts because their "injuries occurred in the course of a common effort" and "relate[] to the genre of activities" that the Defendants perform in Oklahoma, "i.e., marketing of pharmaceuticals." Doc. Nos. 97 at 10–11 (Covidien); 98 at 10–11 (Lilly); 99 at 10–11 (Mallinckrodt); 108 at 10–11; (Cornerstone); 130 at 10–11 (Teva); 131 at 10–11 (Watson); 188 at 13–14 (Mylan). Plaintiffs admit, however, that no Plaintiff is a resident of Oklahoma. Doc. No. 180-1 at 9.

Plaintiffs argue that their lack of in-forum residency is of no moment. Plaintiffs are correct that residency in the forum state is not the *sine qua non* of specific jurisdiction. *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770 (1984). For example, in *Keeton*, a New York resident was able to sue an Ohio corporation headquartered in California for libel in New Hampshire. 465 U.S. 770 (1984). Because the harm from a libelous tort occurs "wherever the offending material is circulated," *id.* at 777, and the libelous material was circulated in New Hampshire, the Court found that New Hampshire was sufficiently connected to the controversy to confer specific jurisdiction over the defendant. *Id.* at 781. The Supreme Court recently reaffirmed the principle that forum residency is not

---

[10] Doc. Nos. 97 at 9–11 (Covidien); 98 at 9–11, 98-1, 98-2 (Lilly); 99 at 9–11 (Mallinckrodt); 108 at 9–10 (Cornerstone); 130 at 9–11, 130-1 (Teva); 131 at 9–11 (Watson); 188 at 12–14, 188-1, 188-2 (Mylan).

8

dispositive for specific jurisdictions in *Walden v. Fiore*, where plaintiffs could not sue a Georgia defendant in Nevada over an incident occurring in Georgia simply by virtue of plaintiffs' Nevada residency. 134 S.Ct. 1115 (2014).

Nevertheless, before the Court may exercise specific jurisdiction over the Defendants, Plaintiffs must show some "true causal element" between the defendants' contacts and the litigation. *Shrader*, 633 F.3d at 1246 n.8. Plaintiffs have not done so. Even assuming that Defendants purposefully directed their activities at Oklahoma, Plaintiffs have not met their *prima facie* burden to show that their injuries arose out of those activities. Plaintiffs are non-Oklahoma residents who ingested propoxyphene-containing products or represent someone who did. Doc. No. 180-1 at 9. The injuries they complain of occurred outside of Oklahoma and arose out of Defendants' marketing and sales of propoxyphene-containing products outside of Oklahoma. Plaintiffs have put forth no evidence the products were ingested in Oklahoma nor any argument to draw any connection between their out-of-state injuries and Defendants' in-state activities under either the but-for or the proximate cause test. Accordingly, the exercise of specific jurisdiction over the Defendants is not proper.

## V. GENERAL JURISDICTION

Plaintiffs alternatively argue that Defendants have sufficient minimum contacts to permit general jurisdiction. At their request, the Court granted Plaintiffs the opportunity to conduct jurisdictional discovery as to general jurisdiction, which ended on April 11, 2016. The Court ordered Plaintiffs to either submit amended responses to Defendants' motions or state that they intended to stand on their original briefs 21 days thereafter, or

May 3, 2016. Instead of doing either, on May 25, 2016, Plaintiffs filed a notice indicating that voluntarily dismissals would be forthcoming. The proper course should have been for Plaintiffs to notify the Court by the deadline required by the Order, not weeks later. In any event, the Court presumes based on the foregoing events that any supplemental responses would not call for a different result.

Because general jurisdiction is unrelated to the events giving rise to the lawsuit, minimum contacts test for general jurisdiction is "more stringent" than that for specific jurisdiction. *Benton v. Cameco Corp.*, 375 F.3d 1070, 1080 (10th Cir. 2004) (quotations omitted); *see also Daimler AG v. Bauman*, 134 S. Ct. 746, 761 n.19 (2014) ("It is one thing to hold a corporation answerable for operations in the forum State . . . quite another to expose it to suit on claims having no connection whatever to the forum State."); *Monge v. RG Petro-Mach. (Grp.) Co.*, 701 F.3d 598, 604, 620 (10th Cir. 2012) (quoting *Benton*, foreign company's contacts with the forum was not "so continuous and systematic as to render [it] essentially at home in the forum State"); *see also Lively v. IJAM, Inc.,* 114 P.3d 487, 494 (Okla. Ct. App. 2005) ("[t]he facts required to establish general jurisdiction must be 'extensive and persuasive.'") (quotations omitted).

A state's exercise of general jurisdiction over a foreign defendant is appropriate when that defendant's "affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum state." *Goodyear, 564 U.S. at 919*;[11] *see also*

---

[11] *Goodyear* arose out of a tragic bus accident outside of Paris that claimed the lives of two boys from North Carolina. 564 U.S. 915, 919 (2011). The boys' parents sued Goodyear and its European subsidiaries in North Carolina state court, blaming Goodyear's defective tire for the accident. *Id.* A North Carolina court found the state could exercise general jurisdiction over the subsidiaries because a percentage of the tires they made were distributed in the state. *Id.* A unanimous Supreme Court held that North Carolina could not exercise general jurisdiction. *Id.*

*Daimler*, 134 S. Ct. at 749 (quoting *id.*).[12] The paradigms for a where corporation is naturally "at home" are its principal place of business and place of incorporation. *Goodyear*, 564 U.S. at 924; *Daimler*, 134 S.Ct. at 760. These locations have "the virtue of being unique—that is, each ordinarily indicates only one place—as well as easily ascertainable." *Daimler*, 134 S.Ct. at 760.

These paradigms, however, are not exclusive. The Supreme Court has not "foreclose[d] the possibility that *in an exceptional case*, a corporation's operations in a forum other than its formal place of incorporation or principal place of business may be so substantial and of such a nature as to render the corporation at home in that State." *Daimler*, 134 S.Ct. at 761 n.19 (emphasis added). The Court has repeatedly rejected arguments suggesting that substantial commercial activity alone would be sufficient for general jurisdiction. For example, in *Goodyear*, the Court cautioned that "[a] corporation's continuous activity within a state is not enough to support the demand that the corporation be amenable to suits unrelated to that activity" and rejected plaintiffs' "sprawling view of general jurisdiction" that "any substantial manufacturer or seller of goods would be amenable to suit, on any claim for relief, wherever its products are distributed." *Goodyear*, 564 U.S. at 929. The Court reaffirmed this position in *Daimler*, rejecting a formulation of general jurisdiction that would permit exercise over a defendant "in every State in which a corporation engages in a substantial, continuous, and systematic course of business" as "unacceptably grasping." 134 S.Ct. at 761 (quotations

---

[12] The question before the Court in *Daimler* was whether a state could exercise general jurisdiction over a foreign company based on the contacts of its in-state subsidiary. 134 S.Ct. 746 (2014).

omitted). Writing for the majority, Justice Ginsburg reminded the parties that general jurisdiction has increasingly played a "reduced role," *Daimler*, *id.* at 755, 757–58, and "only a limited set of affiliations with a forum will render a defendant amenable to all-purpose jurisdiction there." *Id.* at 760. Importantly, a court must appraise "a corporation's activities in their entirety, nationwide and worldwide," because "[a] corporation that operates in many places can scarcely be deemed at home in all of them." *Daimler*, 134 S. Ct. at 762, n.20 (citations omitted).[13]

Plaintiffs argue that each Defendant is subject to general jurisdiction because the Defendant "manufactur[ed] and market[ed] . . . pharmaceutical products,"[14] "conducted extensive commercial activity within Oklahoma for years," and "transacted business" in Oklahoma.[15] Doc. Nos. 97 at 15, 17, 18 (Covidien); 98 at 15, 17, 18 (Lilly); 99 at 15, 17,

---

[13] Years before *Goodyear* or *Daimler*, the Tenth Circuit identified factors to determine whether the exercise of general jurisdiction was proper. *See Trierweiler v. Croxton & Trench Holding Corp.*, 90 F.3d 1523, 1533 (10th Cir. 1996). In post-*Goodyear*, pre-*Daimler* cases, the Tenth Circuit has indicated that these factors remain relevant in the general jurisdiction inquiry. *See Monge*, 701 F.3d at 620 n.9; *Grynberg v. Ivanhoe*, 490 F. App'x 86, 94 (10th Cir. 2012), *cert denied*, 133 S.Ct. 941 (2013). Plaintiffs do not argue that the exercise of general jurisdiction is proper under the *Trierweiler* factors, and so the Court does not address them here.

[14] Plaintiffs did not allege in their Complaint that any defendant actually manufactured pharmaceuticals in the State of Oklahoma, but instead that defendants "were in the business of and did (either directly or indirectly . . .) . . . manufacture . . . throughout the United States, including in the State of Oklahoma . . ." Doc. No. 1-1, at ¶ 39; *see also* ¶ 40, 68, 73, 79, 86, and 89.

[15] When arguing for specific jurisdiction, Plaintiffs argued and submitted evidence related to various commercial activity by the defendants. As discussed above, these contacts have no relationship to the present controversy and are insufficient to confer specific jurisdiction. Conceivably, these contacts could have been relevant to the general jurisdiction analysis. However, Plaintiffs, who bear the burden, did not suggest that the Court should consider these contacts in the context of general jurisdiction. And the Court will not do so here. Plaintiffs were represented by counsel, were granted limited jurisdictional discovery as it relates to general jurisdiction, and were given the opportunity to supplement their briefs. Plaintiffs not only did not supplement their briefs, but they also failed to comply with the Court's Order which required a response by May 3, 2016. Accordingly, the Court will not read arguments in to Plaintiffs' briefs that Plaintiffs failed to include, despite opportunities to do so.

18 (Mallinckrodt); 108 at 14, 16, 18 (Cornerstone); 130 at 15, 17, 18 (Teva); 131 at 15, 17, 18 (Watson); 188 at 16–18 (Mylan). These allegations, without more, are insufficient to show that Defendants are "at home" in Oklahoma. *Daimler*, 134 S. Ct. at 757 ("a corporation's 'continuous activity of some sorts with a state is not enough to support the demand that the corporation be amenable to suits unrelated to that activity'") (quotations omitted); *see also Allen v. IM Sols., LLC*, 83 F. Supp. 3d 1196, 1204 (E.D. Okla. 2015) (defendant "generat[ing] and sell[ing] hundreds of leads to Oklahoma lawyers each month its commercial activities" and having an ongoing relationship with two Oklahoma law firms was not sufficient to confer general jurisdiction); *Evans v. Johnson & Johnson*, 2014 WL 7342404, at *5 (S.D. Tex. Dec. 23, 2014) (allegation that defendants did more business in forum state than they did in the states of incorporation and principal place of business, hired and trained forum residents to market, sell, and train physicians and hospitals on product was insufficient for general jurisdiction); *Locke v. Ethicon Inc.*, 58 F. Supp. 3d 757, 762 (S.D. Tex. 2014), *appeal dismissed* (Apr. 16, 2015) (over a nine-year period, Texas sales of $18 million exceeded the $10 million sales in state of incorporation and principal place of business, insufficient to confer general jurisdiction).

Accordingly, based on the record before it, the Court finds it lacks general jurisdiction over the Defendants.

VI. **APPOINTMENT OF REGISTERED AGENT AS CONSENT TO JURISDICTION**

As an alternative to establishing general jurisdiction through minimum contacts, Plaintiffs urge this Court to find general jurisdiction over certain Defendants based on their compliance with Okla. Stat. tit. 18 § 1022. The statute requires foreign corporations

doing business in Oklahoma to maintain a registered agent. *Id.* By appointing a registered agent, Plaintiffs argue, Defendants have consented to general jurisdiction. For their part, Defendants argue that registration alone is insufficient to confer general jurisdiction, particularly post-*Daimler*.

As Plaintiffs point out, some courts have found, even post-*Daimler*, that registration constituted consent to general jurisdiction. *See, e.g.*, *Acorda Therapeutics, Inc. v. Mylan Pharm., Inc.*, 2015 WL 186833, at *7–14 (D. Del. Jan. 14, 2015); *Senju Pharm. Co., Ltd. v. Metrics, Inc.*, 96 F.Supp.3d 428 (D. N.J. 2015). However, other courts, including the Second Circuit, have concluded that "consent-through-registration" raises due process concerns. *See, e.g.*, *Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 638–39 (2d Cir. 2016); *AstraZeneca AB v. Mylan Pharm., LLC*, 72 F.Supp.3d 549, 555–56 (D. Del. 2014).

Some courts finding registration as a basis for general jurisdiction root their decision on the Supreme Court's decision in *Pennsylvania Fire Insurance Co. of Philadelphia v. Gold Issue Mining & Milling Co*, 243 U.S. 93, 95–96 (1917). In *Pennsylvania Fire*, the Supreme Court upheld a decision of the Missouri Supreme Court that appointment of a registered agent constituted consent to general jurisdiction in Missouri. *Id.* In a subsequent decision, the Supreme Court cautioned that such decisions are guided by state law:

> Unless the state law either expressly or by local construction gives to the appointment a larger scope, we should not construe it to extend to suits in respect of business transacted by the foreign corporation elsewhere . . .

*Robert Mitchell Furniture Co. v. Selden Breck Const. Co.*, 257 U.S. 213, 216 (1921) (emphasis added).

Likewise, the Tenth Circuit has looked to state law to determine whether foreign corporations consented to general jurisdiction through registration. In *Budde v. Ling-Temco-Vought, Inc.*, plaintiff argued defendants consented to general jurisdiction in New Mexico by registering to do business in the state. 511 F.2d 1033, 1036 (10th Cir. 1975). Without direct guidance from New Mexico law, the Tenth Circuit applied the Supreme Court's "preferential construction of foreign corporation process statutes which excludes their operation if the cause of action does not arise out of business done by the corporation in the state," and found no general jurisdiction. *Id.* (citing *Morris & Co. v. Skandinavia Ins. Co.*, 279 U.S. 405 (1929); *Louisville & N. R.R. v. Chatters*, 279 U.S. 320 (1929)). The same plaintiff refiled his case in Colorado and two years later posed a similar argument to the Tenth Circuit. *Budde v. Kentron Hawaii, Ltd.*, 565 F.2d 1145 (10th Cir. 1977). This time, guided by Colorado law, the Tenth Circuit found that registration to do business in Colorado constituted consent to general jurisdiction. *Id.* at 1147–49. The Tenth Circuit distinguished this result from its decision in Budde's New Mexico action based on the differing status of local law on the issue. *Id.* at 1148.

Oklahoma's registration statute is silent on the issue of whether registration constitutes consent to jurisdiction. Okla. Stat. tit. 18 § 1022. Therefore, Plaintiffs' argument is one of implied consent. Neither party cites, nor has the Court found, any Oklahoma authority that provides a direct answer to this issue. Given this lack of authority, the Court applies the Supreme Court's "preferential construction" recognized

by the Tenth Circuit and declines to exercise general jurisdiction over the Defendants on the basis of their registration in the state. This result is consistent with another Oklahoma federal court addressing the issue. *See Samuelson v. Honeywell*, 863 F. Supp. 1503, 1507 (E.D. Okla. 1994) (rejecting argument that registration in Oklahoma constitutes consent to general jurisdiction).

Defendants also argue that Plaintiffs' argument raises due process concerns. As indicated above, other courts have noted that registration as a basis for general jurisdiction may have limited reach post-*Daimler*. The Second Circuit recently observed that exercising general jurisdiction over a defendant simply because it complied with a statute lacking clear jurisdictional implications may run afoul of *Daimler*:

> But we believe that *Pennsylvania Fire* is now simply too much at odds with the approach to general jurisdiction adopted in *Daimler* to govern as categorically as [plaintiff] suggests;[16] in our view, the Supreme Court's analysis in recent decades, in particular in *Daimler* and *Goodyear*, forecloses such an easy use of *Pennsylvania Fire* to establish general jurisdiction over a corporation based solely on the corporation's registration to do business and appointment of an agent under a state statue lacking explicit reference to any jurisdictional implications.

*Brown*, 814 F.3d at 638–39. However, because Plaintiffs' argument finds no support in Oklahoma law, the Court need not reach this issue.

## VII. CONCLUSION

---

[16] There the plaintiff argued that *Pennsylvania Fire* "establishes general jurisdiction in state courts for all corporations that register to do business and appoint an agent in a state," and that there are no due process implications under *Daimler* when the question is about consent to jurisdiction. *Brown*, 814 F.3d at 638.

For the forgoing reasons, the Court concludes it lacks personal jurisdiction over the Defendants and therefore GRANTS their motions to dismiss, Doc. Nos. 5, 26, 27, 77, 121, and 122. The Court GRANTS in part Mylan's Motion to Dismiss, Doc. No. 176, insofar as it relates to personal jurisdiction and DENIES the remainder as MOOT. Accordingly, the Court DISMISSES Plaintiffs' complaint in its entirety. In light of the foregoing, defendants' Joint Motion to Dismiss and/or for Judgment on the Pleadings (Doc. No. 120) is MOOT. The Court further denies Plaintiffs' Motion to Amend/Correct, Doc. No. 148, as MOOT. This matter is DISMISSED WITHOUT PREJUDICE.[17]

IT IS SO ORDERED, this 1st day of June, 2016.

_David L. Russell_
DAVID L. RUSSELL
UNITED STATES DISTRICT JUDGE

---

[17] There remains the issue of Covidien PLC and the "aaiPharma entities" (aaiPharma Inc., aaiPharma LLC, aaiPharma Development Services Inc., Neosan Pharmaceuticals, Inc.). These entities have not made an appearance and at the October 29, 2015 hearing, the Court was informed that they were not properly served. Doc. No. 175, at 10–12. The Court ordered Plaintiffs to clarify, by November 9, 2015, what they intended to do regarding these entities. On that date, Plaintiffs represented they were "in the process of obtaining stipulations by and between all counsel for dismissal and/or clarification" for these entities. On May 27, 2016, certain Plaintiffs filed a motion to dismiss the aaiPharma entities. In any event, the Court has reviewed the allegations regarding these entities and for the reasons set forth herein, concludes that jurisdiction would be lacking as to these entities as well.